**EMERGENCY REQUEST FOR CONTINUANCE AND JUDICIAL INVESTIGATION**
**Case No. 15-31519 – Adv. No. 16-3023**

*FILED*

*OCT 07 2025*

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Honorable Dennis Montali
United States Bankruptcy Court
450 Golden Gate Avenue, 18th Floor
San Francisco, CA 94102

*Confidential*

Your Honor:

I respectfully submit this emergency request for a continuance of the hearing currently set for
**October 8, 2025**, and for the Court to consider initiating an independent investigation into
serious and newly discovered misconduct that occurred **inside this courtroom and under the
Court's supervision**, without my knowledge, consent, or participation.

Upon careful review of the September 19, 2025 motion, it has become clear that the foundation
of this misconduct began with my **intentional exclusion from the second day of trial**. Without
cause, consent, or lawful justification, my counsel represented that I could not attend and
arranged for proceedings to continue in my absence. That exclusion was not a procedural matter
— it was the deliberate starting point that enabled private discussions, secret negotiations, and
fabricated terms to be created behind closed doors, without my participation or objection.

This is not a mere disagreement over legal fees. It is a direct matter of justice, integrity, and the
proper functioning of this Court. The actions described did not occur in private — they occurred
**within this courtroom, during the adversary proceeding, under the Court's own authority.**
By excluding me from the second day of trial and proceeding in my absence, counsel and
opposing parties were able to **weaponize the judicial process itself** to misrepresent facts,
manipulate the record, and push through unauthorized actions — all while making it appear to
this Court that those actions were lawful and agreed upon. Allowing the fee dispute to proceed
without first investigating these events would risk endorsing and legitimizing a process
fundamentally tainted by misconduct.

The filings now before the Court reveal a broader pattern of serious wrongdoing, including but
not limited to:

- False representations that I "agreed" to or "approved" actions I never knew about.
- Unauthorized dismissal instructions, waivers, and settlement terms created without my
  knowledge.
- Coordinated communications with opposing counsel designed to manipulate the outcome.
- Misuse of my property, judgment, and legal rights in negotiations from which I was
  excluded.

Because these facts only came to light after a detailed review of the September 19 motion — and
because additional evidence and documentation are still being gathered — I respectfully request
that the Court:

1. **Continue the October 8 hearing** for a minimum of two to three days to allow me time to prepare and present a full analysis.
2. **Defer reliance** on the representations contained in the current motion until an independent investigation can be initiated.
3. **Postpone the scheduled Zoom hearing** until these matters have been properly reviewed.

**Note on Attachments:**

I am submitting the opposing party's 15-page motion and **Exhibits G and H** in their original, unaltered form. These documents contain the statements and actions that give rise to these concerns. A detailed, line-by-line analysis will be submitted promptly upon the Court's granting of additional time.

If the Court requires additional information, clarification, or supporting documentation to assist its review, I will promptly and fully comply.

Respectfully submitted,


**Jinnie Jinhuei Chang Chao**
Debtor / Pro Se
October 6, 2025

MILLER NASH LLP
Bernie Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
Brianna J. Morrison, OSB Bar No. 222885 (*Pro Hac*)
brianna.morrison@millernash.com
340 Golden Shore, Ste 450
Long Beach, CA 90802
Telephone:     562.435.8002
Facsimile:      562.435.7967

Attorneys for Miller Nash LLP

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JINNIE JINHUEI CHANG CHAO,<br><br>Debtor.<br><br>———————————————<br><br>ARDESHIR SALEM *et al*,<br><br>Plaintiffs,<br><br>vs.<br><br>JINNIE JINHUEI CHANG CHAO,<br><br>Defendant.<br><br>AND RELATED COUNTER-CLAIMS | Case No. 15-31519<br><br>Chapter 11<br><br>Adv No. 16-03023<br>**(Consolidated with Objection to Claim 9-4)**<br><br>**DECLARATION OF BERNARD KORNBERG IN SUPPORT OF MOTION TO DETERMINE ATTORNEYS' FEES AND COSTS OWED TO MILLER NASH LLP**<br><br>Date: October 17, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br><br>Judge: Hon. Dennis Montali |

I, Bernard Kornberg, state and declare as follows:

1.     I am a partner at Miller Nash LLP (the "Firm").I make this declaration based on my own personal and first-hand knowledge.

2.     The Firm previously represented Jinnie Jinhuei Chang Chao ("Debtor") in the litigation between Debtor, one hand, and Ardeshir Salem ("Dr. Salem") and A. Salem, D.D.S., Inc. (the "Dental Practice," and together with Dr. Salem, the "Salem Parties"), on the other. At all times, I was principal counsel for Debtor for the Firm.

3.     To the extent it is relevant to this motion, this declaration also constitutes a

Case: 15-31519   Doc# 431   Filed: 09/19/25   Entered: 09/19/25 15:19:36   Page 1 of
MOTION TO DETERMINE ATTORNEYS' FEES OWED TO MILLER NASH LLP

Case: 15-31519   Doc# 440   Filed: 10/05/25   Entered: 10/05/25 15:00:25   Page 3 of
31

4912-7310-6794.2

certification under Paragraph 8 of the Guidelines for Compensation and Expense Reimbursement of Professional and Trustees of the United States Bankruptcy Court for the Northern District of California.

4.     I initially represented the Debtor at my prior firm, Practus, LLP.  As Debtor was still pre-confirmation, I had my employment approved by the Court. The Court then approved fees and costs of $22,775.98 in its entirety. These fees were applied to the $25,000 advance fee deposit given by Debtor to Practus, LLP. The remainder of the $25,000 deposit made to Practus, LLP was applied to post-effective date fees incurred at Practus, LLP and was entirely exhausted. Kornberg Additional fees beyond this $25,000 were incurred by Debtor to Practus, LLP.

5.     On June 17, 2024, I joined the Firm as a Partner.  Debtor requested that I continue my engagement with her at my new firm.  I explained to her that the terms of the engagement would have to be on those agreeable to the Firm and she agreed to enter into a new engagement agreement and provide a new retainer of $25,000.

6.     Attached as <u>Exhibit A</u> is the July 1, 2024 Engagement Agreement (the "Engagement Agreement" between Debtor and the Firm.

7.     Debtor paid all fees and costs invoiced to her through the December 2, 2024 invoice. Since that date, the Debtor has made no payments to the Firm, despite accruing significant fees and costs.

8.     The Firm seeks an order that it is entitled to payment of attorneys' fees in the amount of $163,630.00, costs in the amount of $29,265.33, and interest of $6,296.30, for a total of $199,191.63.

9.     The Firm continued to represent Debtor after December 2024 because (i) Debtor represented that she had the means to pay and that she would do so; (ii) Debtor explained that a change of email addresses caused her not to receive the invoices from December; and (iii) the fact that the trial was initially scheduled for February 24, and thus by the date the first invoice became overdue, Debtor was only a single payment behind, and the Firm did not believe it could ethically withdraw from the representation on the eve of trial under the applicable rules of professional conduct.

# TABLE OF CONTENTS

I. FACTUAL HISTORY AND BASIS FOR RELIEF ................................................

II. ARGUMENT ..................................................................................................... 5

    A.    Standard For Fee Disputes Under California Law ................................... 6

    B.    The Court's Guidelines ............................................................................ 6

        1.    Employment and Prior Compensation ........................................ 8

        2.    Project Billing .............................................................................. 8

        3.    Billing Summary ........................................................................... 9

        4.    Expenses ...................................................................................... 11

        5.    Interest ........................................................................................ 11

        6.    Client Review of Billing Statement ........................................... 12

    C.    Debtor's Contentions Regarding Settlement ........................................ 12

III. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Curry v. Del Priore,
941 F.2d 730 (9th Cir. 1991) ............................................................. 7

Durdines v. Superior Ct.,
76 Cal. App. 4th 247 (1999) ............................................................. 12

Jenkins v. Weinshienk,
670 F.2d 915 (10th Cir. 1982) ............................................................. 7

Pech v. Morgan,
61 Cal. App. 5th 841 (2021) ............................................................. 7

Solin v. O'Melveny & Myers, LLP,
89 Cal. App. 4th 451 (2001) ............................................................. 12

**Statutes**

11 U.S.C.§ 328 ............................................................. 6

Cal. Business & Prof. Code §§ 6200 et seq. ............................................................. 6

Cal. Evid. Code § 958 ............................................................. 12

**Other Authorities**

California State Bar Rule 3.501 ............................................................. 6

Federal Rule of Bankruptcy Procedure 2016(a) ............................................................. 6

Case: 15-31519   Doc# 420   Filed: 09/10/25   Entered: 09/10/25 15:14:08   Page 4 of
Case: 15-31519   MOTION TO DETERMINE FEES AND COSTS OWED TO MILLER NASH LLP
13
31

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL HISTORY AND BASIS FOR RELIEF

Miller Nash LLP (the "Firm") was counsel for debtor Jinnie Jinhuei Chang Chao ("Debtor") in the litigation between her by Ardeshir Salem ("Dr. Salem") and A. Salem, D.D.S., Inc. (the "Dental Practice," and together with Dr. Salem, the "Salem Parties"). After negotiating and obtaining a highly favorable settlement for Debtor, the Firm sent Debtor a final invoice seeking payment of outstanding fees of $163,630.00 and costs in the amount of $29,265.33, for a total of $192,895.33. Declaration of Bernie Kornberg (the "Kornberg Decl.") ¶ 8. Since receiving that invoice, Debtor has refused to pay her outstanding balance or communicate with the firm about it.

Debtor was fully aware that she would be required to pay the Firm's fees for representing her in the litigation with the Salem Parties. Kornberg Decl. ¶ 36. At the mediation held on January 31, 2025, the Firm, as part of its analysis regarding whether to take the settlement offer, orally informed Debtor that she would incur fees in excess of $100,000 to proceed through trial, not including fees that she already had incurred and owed the firm. Kornberg Decl. ¶ 37. The Firm further advised Debtor that a settlement would cost less than the legal fees she would incur at trial. Kornberg Decl. ¶ 38. Debtor stated that she was willing to pay the Firm's fees rather than settle, and that she had the means for immediate payment of them. Kornberg Decl. ¶ 39. Debtor did not ask for any further estimates of costs. Kornberg Decl. ¶ 39. Indeed, when the Firm raised with Debtor the issue of the fees and costs associated with trial to ensure that Debtor understood the consequences of rejecting settlement, Debtor asserted that she did not want to discuss settlement further and that she was willing to pay for trial. Kornberg Decl. ¶ 39.[2]

In response, Debtor, without any notice or attempt to communicate with the Firm about her

---

[2] While not squarely relevant to this motion, Debtor had just confirmed a plan where she stated that she owned real properties with collective equity of over $4,000,000 and that those funds could be used to pay her creditors. [Dkt. #407 at p.5]. Thus the Firm had reason to believe that the Debtor could afford the defense she asked the Firm to provide her, and that she intended to do so. Kornberg Decl. ¶ 39.

4910-4567-2797.3

past-due account balance, filed a "Motion to Disallow Unapproved Attorney Fees and Costs" (the "Motion"). [Dkt. #418.][3] In the Motion, Debtor asserted that the Firm had failed to seek approval of its legal fees under Federal Rule of Bankruptcy Procedure 2016(a) and asked the Court to disallow all fees and costs incurred by the Firm. [Dkt. #418.] In response, the Court entered an order stating that "[Debtor] has not served that counsel with any of the June 18, 2025 submissions and there is no current request for any fees from that counsel. If either Debtor or counsel believes that is a matter for this court to decide, she or it needs to set the matter for hearing on proper notice to all parties." [Dkt. # 422].

All fees and costs sought by the Firm were incurred after May 10, 2025, the effective date of Debtor's Chapter 11 plan and the date the estate revested in Debtor. [Dkt. # 408, 423]; Kornberg Decl. ¶ 7. Accordingly, the requirements for Court approval of the compensation of professionals no longer applied. See 11 U.S.C.§ 328; Fed. R. Bankr. P. 2016(a). On July 11, 2025, the Firm sent a letter to Debtor to that effect and again requested payment (the "July 11 Fee Letter"). July 11 Fee Letter, <u>Exhibit F</u> to Kornberg Decl. The Firm included with the letter a Notice of Client's Right to Fee Arbitration required under California and Professions Code section 6200 et seq. July 11 Fee Letter, <u>Exhibit F</u> to Kornberg Decl. Debtor did not respond to the July 11 Fee Letter or otherwise request mandatory fee arbitration within the 30-day period provided by the State Bar Rules. See California State Bar Rule 3.501. Kornberg Decl. ¶ 43. Instead, Debtor filed an additional request for the Court to adjudicate the fee dispute. [Dkt. #427.] Debtor has also refused to respond to the Firm's attempts to contact Debtor by email, telephone, and text to attempt to resolve this dispute. Kornberg Decl. ¶ 41.

Accordingly, the Firm has no alternative but to seek legal relief as to payment of its fees and costs, along with the interest allowed under its engagement agreement.

## II. ARGUMENT

### A.   Standard For Fee Disputes Under California Law

This Court has ancillary jurisdiction to determine fee disputes between a party and its

---

[3] All references to the docket are to the docket of the underlying bankruptcy proceeding.

MOTION TO DETERMINE ATTORNEYS' FEES AND COSTS OWED TO MILLER NASH LLP

1   attorneys for matters heard before it. *See Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991)

2   (collecting cases); *see also Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982)

3   ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with

4   respect to the work done in the suit being litigated, easily fits the concept of ancillary

5   jurisdiction"). Further, because this Court heard this litigation and presided over the trial, it is in

6   the best position to determine the amount of fees and costs the Firm is entitled to.

7        The standard for determining the amounts owed to the Firm is not the "reasonable

8   compensation for actual, necessary services" standard of section 330 of the Bankruptcy Code.

9   Rather, because the fees were incurred by a post-confirmation Debtor, and not the estate, the

10  Firm's entitlement to fees is governed by California contract law.

11       Under California law, a reviewing Court in a fee dispute between a client and counsel first

12  "review[s] the agreement's terms to ensure the agreed upon fee is not unconscionable under Rule

13  1.5." *Pech v. Morgan*, 61 Cal. App. 5th 841, 852 (2021). If the Court determines that the fee

14  agreement is not unconscionable, "[its] next step is to review the attorney's performance under the

15  terms of the agreement." *Id.* In doing so, the Court shall "apply a 'reasonableness' standard ... in

16  reviewing the attorney's performance under the fee agreement, including an assessment of

17  whether the attorney used reasonable care, skill and diligence in performing the duties required of

18  the attorney under the contract, that unnecessary, duplicative or unproductive time is not charged

19  to the client, and that the attorney has not performed services that were required as a result of the

20  attorney's negligence or some lack of ordinary skill or diligence." *Id.*

21       Under this standard, so long as it is not unconscionable, "an attorney is free to contract

22  with a client for a fee that exceeds what might otherwise constitute 'reasonable' compensation, as

23  long as the rate to be charged and general nature of the legal services to be provided are disclosed

24  in the contract." *Id.* at 853. Nonetheless, "consistent with the attorney's fiduciary duty and the

25  implied covenant of good faith and fair dealing, that the attorney has a contractual obligation to

26  render performance in good faith and in a professional manner, and that the attorney's performance

27  must be reviewed under a reasonableness standard that accounts for this obligation." *Id.*

28       While the standard set forth above is less strict than that which the Court is used to under

fee applications under the Bankruptcy Code, its contours are similar. The Firm suggests that under either standard, it is entitled to the full fees and costs it has requested. To that extent, the Firm will provide the information required from in Court's Guidelines for Compensation and Expense Reimbursement.

**B.     The Court's Guidelines**

**1.     Employment and Prior Compensation**

Bernie Kornberg, the principal counsel who handled this matter, had his employment approved by the Court through his prior firm, Practus, LLP. [Dkt. #373]. The Court then approved fees and costs of $22,775.98 in its entirety. [Dkt. #414]. These fees were applied to the $25,000 advance fee deposit given by Debtor to Practus, LLP. [Dkt. #414]. The remainder of the $25,000 deposit given to Practus, LLP was applied to post-effective date fees incurred at Practus, LLP and was entirely exhausted. Kornberg Decl. ¶ 4.  Additional fees beyond this $25,000 were incurred by Debtor to Practus, LLP, but were relatively minimal. Kornberg Decl. ¶ 4.

Bernie Kornberg joined the Firm effective June 17, 2024. Kornberg Decl. ¶ 5.  On July 11, 2024, Debtor signed an engagement agreement (the "Engagement Agreement") with the Firm. Kornberg Decl. ¶ 6; Engagement Agreement, Ex. A to Kornberg Decl. The Engagement Agreement—which contains a number of standard terms for a law firm engagement—also provided for a discounted rate of $550 an hour for Bernie Kornberg, from his standard rate of $645 an hour (which was increased to $695 an hour in 2025), to reflect the prior hourly rate Debtor received from him at Practus, LLP. Kornberg Decl. ¶ 29. The Engagement Agreement also called for a $25,000 advance fee deposit, which was paid by Debtor, and subsequently and applied to the balance owed. Engagement Agreement, Ex. A to Kornberg Decl.

Debtor paid all fees and costs invoiced to her through the December 2, 2024 invoice. Kornberg Decl. ¶ 7. Since that date, the Debtor has made no payments to the Firm. Kornberg Decl. ¶ 7. Counsel continued to represent Debtor because (i) Debtor represented that she had the means to pay and that she would do so; (ii) Debtor explained that a change of email addresses caused her not to receive the invoices from December; and (iii) the fact that the trial was initially scheduled for February 24, and thus by the date the first invoice became overdue, Debtor was only a single

1  payment behind, and the Firm did not believe it could ethically withdraw from the representation
2  under the applicable rules of professional conduct. Kornberg Decl. ¶ 9.

3  **2.  Project Billing**

4  The work performed by the Firm for Debtor was entirely incurred in the litigation between
5  Debtor and the Salem Parties and can be categorized in the following stages. The fees listed in this
6  section include all fees incurred by Debtor, regardless whether previously paid or otherwise.

7  **General - $10,505.00:** These represent general litigation activities required to prepare
8  Debtor's case for settlement or trial and are not otherwise described in this motion. Because the
9  case was at a generally advanced stage when Bernie Kornberg moved to the Firm, most of the
10 activities were communicating with the client, the retained forensic expert, and reviewing
11 discovery to determine what additional depositions were necessary. Kornberg Decl. ¶ 14.

12 **Deposition of Salem Parties - $6,710.00:** On January 15, 2025, counsel took the
13 deposition of the Salem Parties through the deposition of Ardeshir Salem. This deposition was
14 scheduled in advance of the mediation for purposes of assessing liability if the case went to trial.
15 The fees were incurred for the preparation and taking of the deposition. Kornberg Decl. ¶ 15.

16 **Mediation - $8,525.00:** On January 31, 2025, the Firm attended an all-day mediation at
17 JAMS before the Honorable Wynne S. Carvill. Fees were incurred for the preparation of the
18 mediation brief and attending the mediation. At the mediation, Debtor rejected the mediation offer
19 of the Salem Parties. Before doing so, the Firm informed Plaintiff that if the matter went to trial,
20 the fees incurred would exceed $100,000 and that the Firm intended to bring in a skilled
21 bankruptcy litigation associate from Portland to assist with the trial. Debtor stated that she was
22 prepared to pay those fees and had the means to pay them. Kornberg Decl. ¶ 16.

23 **Pre-Trial Preparation - $107,753.00:** The fees incurred here were between February 2,
24 2025, the day after the mediation, and March 30, 2025, the day before trial. These fees were
25 incurred in the intense preparation for trial.

26 The bulk of this time was reviewing, compiling, and preparing for introduction at trial, the
27 voluminous discovery in the Firm's possession. This includes discovery performed by Debtor in
28 state court before she filed for bankruptcy, the discovery received by Debtor as part of her

criminal case, and the discovery produced in Debtor's adversary proceeding before this Court. This discovery included (i) tens of thousands of pages of bank statements and copies of thousands of checks for the Salem Parties; (ii) deposition transcripts of Debtor, the Salem Parties, and Darrow Chu and Deepa Subramaniam, third-party witnesses scheduled to be called at trial; (iii) more than 20 witness interviews by various law enforcement agencies, including several hour-long interviews of the Debtor; (iv) forensic accounting reports from the criminal case against Debtor; and (v) thousands of additional documents. In depth review of these documents was not performed until trial as it was not deemed necessary to prepare the case for a potential settlement.

Extensive review of this evidence was necessary due to the nature of the trial. The Salem Parties had accused the Debtor, who was acting as office manager during the relevant time period, of embezzling more than one million dollars from the Dental Practice. At the same time, Debtor admitted at trial to writing hundreds of thousands of dollars worth of checks for her own benefit from the Dental Practices funds. There was no written evidence from Dr. Salem providing, or denying, her authorization to do so. Thus the case would turn on credibility determinations by the Court that Debtor was telling the truth regarding her authorization and that Dr. Salem was testifying falsely regarding her lack of authority. This strategy ultimately resulted in Dr. Salem's testimony being proven false during impeachment during the second day of trial, leading to the settlement of the case without any payment by the Debtor.

Further fees and costs were incurred in preparing the necessary pre-trial brief, the motions in limine, preparing the Debtor for her trial examination, and other necessary trial preparation. Kornberg Decl. ¶¶ 17-20.

**Trial - $26,741.00**: These fees were incurred during the two days of trial, March 31 and April 1, by Bernie Kornberg and Brianna Morrison, along with minor other support work by Brett Palmer remotely. These fees are reasonable given the demands on attorney time during trial. Kornberg Decl. ¶ 21.

**Post-Trial Settlement: $6,498.50**: These are the fees and costs in accounting the settlement to the Court and appearing at the post-trial hearing, preparing the settlement agreement, and effecting the settlement in the bankruptcy court and state court proceeding. Kornberg Decl. ¶

22.

### 3. Billing Summary

The total amounts incurred by Debtor to the firm is $166,820.00 in fees and $69,265.33 in costs. Debtor has paid, through her retainer and monthly payments, $43,190,00 to the firm, which was applied to the balance owed, leading to the current balance of $163,630.00 in fees and $29,265.33 in costs.

The timekeepers and fees incurred by the Firm are as follows:

| Name | Title | Rate | Hours | Total |
|------|-------|------|-------|-------|
| Bernie Kornberg | Partner | $550 | 159.0 | $87,450.00 |
| Amy Jones | Paralegal | $320 | 35.0 | $11,200.00 |
| Brianna Morrison | Associate | $455 | 147.9 | $67,294.50 |
| Brett Palmer | Associate | $410 | 3.8 | $1,558.00 |

A detailed breakdown of the fees incurred by the estate, separated by project billing category, are attached to the Kornberg Decl. as Exhibit B.

No fees and costs are sought in this motion for the preparation of the motion or collection on the invoices.

### 4. Expenses

The total expenses incurred in this matter constitute $69,265.33. A detailed breakdown of expenses in the case are attached to the Kornberg Decl. as Exhibit C. These expenses are authorized by the engagement agreement and are otherwise customary and reasonable.

Counsel will note that the largest expense was paid to David Golbahar, the consulting forensic expert for Debtor. David Golbahar was initially hired by the Firm through his employer at Armanino LLP. Midway through the case, he left Armanino and started Golbahar consulting group, which was retained by the Firm. Total fees of $48,320.29 were paid by the Firm on Debtor's behalf for these services, of which $15,000 was a retainer to Armanino, which was later reimbursed to the Firm and applied to Debtor's outstanding fees. The retention of a forensic expert for pretrial and trial purposes was expressly authorized by Debtor.

**5.  Interest**

The Engagement Agreement provides that if a statement is not paid within 30 days, the Firm may charge 9% interest on past-due amounts. Engagement Agreement at § 2, Ex. A to Kornberg Decl.  When Debtor refused to pay or otherwise communicate with the Firm, the Firm advised Debtor that it would apply interest to past-due amounts. July 11 Fee Letter, Ex. F to Kornberg Decl. As of the hearing date of October 17, 2025, the interest owed to the Firm totals $27.  The Firm asks that the Court award that interest as provided in the Engagement Agreement.

**6.  Client Review of Billing Statement**

The Firm sent Debtor monthly invoices for the work it performed. Statements, Exhibit E. This motion will be served on Debtor by email, regular mail, and text message.

**C.  Debtor's Contentions Regarding Settlement**

In her August 17 Declaration, Debtor appears to assert for the first time that fees should be reduced because the firm allegedly breached its duty to her by (1) settling the case without her permission and (2) not excluding from the mutual release in the settlement agreement a judgment held by Debtor against the Salem Parties.  [Dkt. # 427 at ¶ 3, 4]. These assertions are demonstrably false.

In order to defend itself against Debtor's assertions, the Firm must disclose communications that are potentially subject to the attorney-client privilege. Under the California Evidence Code, "[t]here is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." Cal. Evid. Code § 958. This rule exists because "a trial attorney whose competence is assailed by his former client must be able to adequately defend his professional reputation, even if by doing so he relates confidences revealed to him by the client." *Durdines v. Superior Ct.*, 76 Cal. App. 4th 247, 255 (1999). Thus "it would be unjust to permit a client ... to accuse his attorney of a breach of duty and to invoke the privilege to prevent the attorney from bringing forth evidence in defense of the charge." *Solin v. O'Melveny & Myers, LLP*, 89 Cal. App. 4th 451, 463–64 (2001). Accordingly, the Firm will, to the extent necessary, provide evidence to show that

Debtor's claims are false.[4]

As to Debtor's claim that the Firm settled her claims without her permission, the communications between counsel and Debtor bely this claim. In this case, the settlement negotiations occurred after the end of the second day of trial on April 1, 2025. Kornberg Decl. ¶ 45. The Salem Parties conveyed an offer to release the claims against Debtor for payment of a sum certain and a complete release of claims against the Salem Parties, including Debtor's judgment against the Dental Practice. Kornberg Decl. ¶ 46. This offer was conveyed by the Firm to Debtor and, in plain English, it was explained that this settlement would result in her giving up her judgment as to the Dental Practice. Kornberg Decl. ¶ 47. This was observed by both of Debtor's counsel, Bernie Kornberg and Brianna Morrison of the Firm, and David Golbahar, the consulting forensic account at trial. Kornberg Decl. ¶ 47.

Ultimately, a revised offer was made that same night by the Salem Parties that did not include a requirement for payment of funds. Kornberg Decl. ¶ 48. This offer was discussed with Debtor via the phone. Kornberg Decl. ¶ 49. Debtor stated that she would have to consider it and that she wanted to consult with Ethan Balough, her counsel in her criminal case regarding Plaintiffs, and her adult sons. Kornberg Decl. ¶ 50.

//
//
//
//
//
//
//
//
//

---

[4] Bearing in mind its ethical duties, the Firm will seek to present only that evidence it deems absolutely necessary to make its case. But the Firm reserves the right to introduce supplemental evidence to respond to any further allegations made by Debtor.

Debtor then sent Bernie Kornberg, her counsel, the following series of texts.



Kornberg Decl. ¶ 51.

Accordingly, Debtor was aware that the settlement included giving up her judgment, as she confirmed that she agreed that "he has no money to pay you back." After receiving this text, Bernie Kornberg called Debtor, who confirmed the settlement terms, including the release of the Dental Practice. Kornberg Decl. ¶ 52. Later that night, he also spoke to Ethan Balough, who also confirmed the scope of the settlement. Kornberg Decl. ¶ 52.

Further, afterwards, the parties memorialized the settlement in the written Settlement Agreement dated April 11, 2025 (the "Settlement Agreement"). Aside from the mutual release, the

14

1 Settlement Agreement expressly calls for dismissal of the state court action out of which the
2 judgment arises and satisfaction of the judgment. Settlement Agreement at § 3, Ex. G to Kornberg
3 Decl. Debtor electronic signed the Settlement Agreement via DocuSign. DocuSign Certificate,
4 Ex. H to Kornberg Decl. In short, Debtor cannot say that she did not agree to the release when she
5 knowingly signed a settlement agreement which provided exactly for the release of claims and
6 satisfaction of the judgment.

## III. CONCLUSION

The Firm diligently represented Debtor in a contentious trial, and managed to obtain a very
positive result for Debtor. The Firm is entitled to payment in full for its services, and respectfully
requests that the Court enter an order determining that the amount owed to the Firm by Debtor is
$163,630.00, costs in the amount of $29,265.33, and interest of $6,296.30, for a total of
$199,191.63.


DATED: September 19, 2025                MILLER NASH LLP



                                         By:  /s/ Bernard J. Kornberg
                                         BERNARD J. KORNBERG
                                         BRIANNA J. MORRISON, OSB Bar No. 222885 (*Pro Hac*)

                                         Attorneys for Miller Nash LLP.

MOTION TO DETERMINE ATTORNEYS' FEES AND COSTS OWED TO MILLER NASH LLP

4910-4567-2297.3

# EXHIBIT G

Docusign Envelope ID: 9FCE00F9-9DC8-4DE2-953B-FCD328BAD3C7

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "***Agreement***") is entered into as of April 11, 2025 (the "***Effective Date***"), and is by and between Jinnie Jinhuei Cheng Chao ("***Chao***"), an individual on one hand, and Ardeshir Salem ("***Salem***"), an individual and A. Salem D.D.S. Inc., a California Corporation (the "***Dental Practice***") (collectively, the "***Salem Parties***"), on the other hand. Chao and the Salem Parties are collectively referred to as the "***Parties***" and each individually as a "***Party***".

## RECITALS

WHEREAS, on January 26, 2012, Chao commenced a lawsuit in Santa Clara County Superior Court, case number 1-12-CV-217465, for causes of action to recover the advanced funds and back wages and sought damages against both entities in the total of $1,474,500 against Salem and the Dental Practice (the "***State Court Proceeding***");

WHEREAS, on August 14, 2012, the Dental Practice and Salem filed a cross-complaint against Chao and other parties in the State Court Proceeding;

Whereas, on January 14, 2015, the Dental Practice filed a new action (the "2015 Complaint") as to Jinnie Chao and others in Santa Clara Superior Court, case no. 1-15-cv-275589, which was consolidated into the State Court Proceeding;

WHEREAS, on December 12, 2013, Chao obtained a default judgment against the Dental Practice in the State Court Proceeding (the "***State Court Judgment***");

WHEREAS, on December 4, 2015, Chao commenced a case under Chapter 11 of Title 11 of the United States Bankruptcy Court in the Northern District of California, San Francisco Division (the "***Bankruptcy Court***"), Case No. 15-31519 (the "***Bankruptcy Case***");

WHEREAS, on March 10, 2016, the Salem Parties filed an adversary complaint (the "***Adversary Complaint***") bringing a claim to Determine the dischargability of Chao's debt to Salem and the Dental Practice and object to her discharge (the "***Adversary Proceeding***");

WHEREAS, Chao answered the Adversary Complaint and brought a cross-complaint against Salem, reasserting the claims raised in the State Court Action as to non-payment of her personal loans to him (the "***Adversary Cross-Complaint***");

WHEREAS, the Salem Parties filed Claim 9-4 in this Adversary Proceeding. Claim 9-4 seeks payment of the sum of $1,156,805.38 and is predicated on the same claims as raised in the Adversary Proceeding. [Claim 9-4] (the "***Proof of Claim***");

WHEREAS, Chao objected to this claim and the claim objection was consolidated with the Adversary Proceeding;

WHEREAS, On April 4, 2024, Chao renewed the State Court Judgment against the Dental Practice;

WHEREAS, to avoid the expense and uncertainty of litigation, the Parties desire to resolve all claims related to the State Court Proceeding, the State Court Judgment, the Proof of Claim, and the Adversary Proceeding, subject to the terms of conditions of this Agreement; and

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows.

## AGREEMENT

1.      **Recitals True**. The foregoing recitals are true in all respects and incorporated by reference as though fully set forth as provisions of this Agreement.

2.      **Court Approval.**  Pursuant to the Court's April 2, 2025 ruling, the parties shall submit this Settlement Agreement for approval of the Bankruptcy Court through the Bankruptcy Stipulation (as defined in section 3.a., below).  This Settlement Agreement shall become effective upon entry of an order from the Bankruptcy Court approving the Settlement Agreement.

3.      **Settlement**. In consideration for the mutual releases set forth herein, the Parties agree to the following:

   a. ***Dismissal of Adversary Proceeding and Withdrawal of Proof of Claim***. The Parties agree to dismiss the Adversary Proceeding, including the Adversary Complaint and Cross-Complaint, with prejudice and with the parties to bear their own costs, and to withdrawal Proof of Claim 9-4 with prejudice.  Counsel for the Parties shall, concurrent with the execution of this Agreement, sign the Stipulation to Approve Settlement, Dismiss the Adversary Proceeding, and Withdraw Claim 9-4 (the "Bankruptcy Stipulation") attached as <u>Appendix A</u> to this Agreement.  Counsel for Chao shall, without waiting for the effective date, file the Bankruptcy Stipulation, with a conforming order, in the Adversary Proceeding within three court days of full execution of this Agreement, including <u>Appendix A</u>, <u>Appendix B</u>, and <u>Appendix C</u>.

   b. ***Dismissal of the State Court Action.***  The Parties agree to dismiss the State Court Action, including the consolidated 2015 Complaint, in its entirety, with prejudice, and with the parties to bear their own costs.  Counsel for the Parties shall, concurrent with the execution of this Agreement, sign the Request for Dismiss attached as <u>Appendix B</u> to this Agreement.  Counsel for Chao shall file the Request.for Dismissal in the State Court Action within three court days of the Effective Date of this Agreement.

Docusign Envelope ID: 9FCE00F9-9DC8-4DE2-953B-FCD328BAD3C7

    c. ***Satisfaction of State Court Judgment***. Counsel for Chao shall, concurrent with the execution of this Agreement, sign the Satisfaction of Judgment attached as <u>Appendix C</u> to this Agreement. Counsel for Chao shall file the Satisfaction of Judgment in the State Court Action within three court days of the Effective Date of this Agreement.

    d. ***No Payment.*** No money shall exchange hands as part of this Agreement. Except for as set forth in paragraph 8.g., below, the Parties agree to bear their own fees and costs.

4.    **<u>Mutual General Release</u>**. Except with respect to any rights, obligations or duties arising out of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Chao, on the one hand, and Salem and the Dental Practice, on the other hand, do hereby, for themselves, their affiliates, family members, members, shareholders, officers, employees, attorneys, representatives, agents, successors and assigns (collectively, the "Releasing Parties"), release, acquit and forever discharge each other, and their respective affiliates (including American Dental Management Corp. and Wizcorp Corporation), family members (including Jonathan Chao and Justin Chao), members, shareholders, officers, employees, attorneys, representatives, agents, successors and assigns (the "Released Parties") of and from any and all known or unknown claims, demands, complaints, charges, lawsuits or claims for relief of any kind. The purpose of this release is to fully resolve all disputes, known or unknown, between the Released Parties as of the effective date of this Agreement, and as such, the release should be interpreted in the broadest possible manner.

    The Releasing Parties certify that they have read the provisions of California Civil Code Section 1542 and have consulted their own counsel regarding that section. The Releasing Parties waive any and all rights under California Civil Code Section 1542, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

    The Releasing Parties agree and acknowledge that the released claims extend to and include unknown and unsuspected claims.

5.    **<u>Acknowledgements</u>**. The Parties acknowledge that:

    a.    The Parties have read and understands the effect of the release in paragraph 3 of this Agreement (the "***Release Provision***"); The Parties had the assistance of independent counsel of their own choice, or had the opportunity to retain such independent counsel, in reviewing, discussing, and considering all the terms of the Release Provision; and if counsel was retained, counsel for the Parties have read and considered the Release Provision and advised the Parties to execute the same. Before execution of this Agreement, the Parties had adequate

opportunity to make whatever investigation or inquiry the Parties deem necessary or desirable in connection with the subject matter of the Release Provision.

      b.     The Parties are not acting in reliance on any representation, understanding, or agreement not expressly set forth herein. The Parties acknowledges that each county-party has not made any representation with respect to the Release Provision except as expressly set forth herein.

      c.     The Parties have executed this Agreement and the Release Provision as the Parties' free and voluntary act, without any duress, coercion, or undue influence exerted by or on behalf of any person.

      d.     The Parties have not sought, received, or relied on the counter-party or any agent for a counter-party for any tax advice of any kind with respect to the effects of this Agreement, the forgiveness of the Remaining Balance, the Release, or the delivery of any consideration identified herein. The Parties have been advised to consult with their own tax advisor regarding any tax issues that may arise from entering into this Agreement, including any taxable income that may be recognized by the Parties as a result of the forgiveness of the Loan.

6.    **Non-Admission**. It is understood and agreed that this Agreement does not constitute any admission by the Parties with respect to any conduct or action, including any of the claims, allegations or defenses raised, or which could have been raised, in the State Court Proceeding, the Bankruptcy Case, or the Adversary Proceeding, and that, except as provided herein, this Agreement is being entered into solely for the purpose of resolving disputed claims and issues of fact. Neither this Agreement nor any allegations, claims and/or defenses from the State Court Proceeding, the Bankruptcy Case, or the Adversary Proceeding shall be cited or referenced in any way by either of the Parties as being indicative of any improper or illegal conduct, wrongdoing, or liability on the part of any of the Parties.

7.    **Representations**.

      a.     *No Assignment*. Each Party represents and warrants that it is the sole and exclusive owners of all claims and causes of action that are the subject of this Agreement, that it has not assigned an interest in the claims and causes of action described in this Agreement to any other person, party or entity, and that it has the sole and exclusive, unqualified right to give the releases and make the agreements, covenants, and representations set forth in this Agreement.

      b.     *Capacity; Authority*. Each Party represents and warrants that it has capacity to enter into this Agreement and covenant on its own behalf and on behalf of its heirs, family members, successors and assigns never to make any claim to the contrary. Each Party further represents and warrants that it has full and complete authority to execute this Agreement for the Parties on whose behalf it signs and thereby to legally bind such Party to the terms hereof.

4906-3860-1264.2

c.      *Legal Representation*. Each Party represents and warrants that it is either represented by legal counsel, who has reviewed and approved the terms of this Agreement, or has been provided the opportunity to have the terms of this Agreement reviewed by legal counsel and has chosen not to.

8.      **Miscellaneous.**

a.      *Choice of Law; Jurisdiction; Jury Waiver*.  This Agreement is to be interpreted and construed according to the laws of the state of California, without regard to choice-of-law principles. The Parties agree that any dispute regarding this Agreement shall be decided by motion brought to United States Bankruptcy Court for the Northern District of California, and the Parties consent to the jurisdiction of that Court.  If that Court determines it lacks jurisdiction to hear the dispute or otherwise declines to hear the dispute, the Parties shall submit the Dispute to any Court with jurisdiction venued within the City of San Francisco, California. **TO THE FULLEST EXTENT ALLOWED BY LAW, THE PARTIES WAIVE THEIR RIGHT TO TRIAL BY JURY IN ANY CASE OR PROCEEDING PERTAINING TO THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT AND ANY ASSOCIATED DOCUMENT.**

b.      *Binding Agreement*. This Agreement is binding on the Parties and their heirs, family members, affiliates, predecessors, successors, assigns, estates, personal representatives, executors, owners, officers, directors, shareholders, principals, members, managers, employees, agents, and representatives, and on any other person or entity claiming a right or interest through any Party.

c.      *Counterparts*. This Agreement may be executed (a) by electronic or facsimile signatures and (b) in separate counterparts, which together are deemed to be the original Agreement.

d.      *Construction*. The rule of construction that an agreement is to be construed against the drafting party is not to be applied in interpreting this Agreement. The Parties acknowledge that they have executed this Agreement voluntarily and that they understand its meaning and intent. Section titles within this Agreement are for convenience only and are not to be considered as substantive terms of this Agreement.

e.      *Entire Agreement*. This Agreement is the final and complete integration of the agreements of the Parties concerning the subject matter it contains, and the terms of this Agreement may not be modified except by a further written agreement signed by all Parties. This Agreement supersedes any prior oral or written agreements or communications on the subject matter it addresses.

f.      *Further Cooperation and Assurances*. Each Party agrees to take further action and execute further documents as reasonably necessary to effectuate the intent of this Agreement.

g.   *Costs and Attorney Fees.* Notwithstanding the foregoing, in the event that any Party to this Agreement brings an action to enforce the provisions of this Agreement, the prevailing party in such action shall be awarded its reasonable attorney's fees, costs, and other expenses in connection with such action. Any judgment which results from an action to enforce the provisions of this Agreement shall include an award of all reasonable attorneys' fees, costs and other expenses associated with enforcing and executing the judgment.

IN WITNESS WHEREOF, the undersigned have executed this Agreement

A. Salem D.D.S.

By: ___*Ardeshir salem*___
Name: Ardeshir Salem
Title:  Chief Executive Officer

*Ardeshir salem*
_____
Ardeshir Salem, individually

DocuSigned by:
*Jinnie Chao*
_____
5BA501AC0X0040Z
Jinnie Cheng Chao, individually

4906-3860-1264.2

Docusign Envelope ID: 9FCE00F9-9DC8-4DE2-953B-FCD328BAD3C7

 **DigiSigner**                    # Audit Trail

DigiSigner Document ID: 70fa3d7c-e317-4170-a546-1b539374ab54

**Signer**                                          **Signature**

Email: smile@smilelosaltos.com
IP Address: 2603:3024:1824:4800:851e:71d9:1d79:c06d

*Ardeshir salem*

Email: smile@smilelosaltos.com
IP Address: 2603:3024:1824:4800:851e:71d9:1d79:c06d

*Ardeshir salem*

| Event | User | Time | IP Address |
|---|---|---|---|
| Upload document | danjoulaw@gmail.com | 4/22/25 1:00:08PM EDT | 24.4.39.100 |
| Open document | danjoulaw@gmail.com | 4/22/25 1:00:18PM EDT | 24.4.39.100 |
| Close document | danjoulaw@gmail.com | 4/22/25 1:00:52PM EDT | 24.4.39.100 |
| Send for signing | danjoulaw@gmail.com | 4/22/25 1:01:16PM EDT | 24.4.39.100 |
| Open document | smile@smilelosaltos.com | 4/24/25 4:16:58PM EDT | 2603:3024:1824:4800:851e:7 1d9:1d79:c06d |
| Sign document | smile@smilelosaltos.com | 4/24/25 4:20:49PM EDT | 2603:3024:1824:4800:851e:7 1d9:1d79:c06d |
| Close document | smile@smilelosaltos.com | 4/24/25 4:20:49PM EDT | 2603:3024:1824:4800:851e:7 1d9:1d79:c06d |

# EXHIBIT H



## Certificate Of Completion

Envelope Id: 9FCE00F9-9DC8-4DE2-953B-FCD328BAD3C7
Subject: Settlement Agreement
Source Envelope:
Document Pages: 7
Certificate Pages: 4
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 1
Initials: 0

Status: Completed

Envelope Originator:
Bernie Kornberg
111 SW 5th Ave
Suite 3400
Portland, OR 97204
bernie.kornberg@millernash.com
IP Address: 52.182.227.38

## Record Tracking

Status: Original
    4/24/2025 | 03:23 PM

Holder: Bernie Kornberg
    bernie.kornberg@millernash.com

Location: DocuSign

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jinnie Chao<br>jchao888@gmail.com<br>Security Level: Email, Account Authentication (None) | *Jinnie Chao*<br>3D4F01AC95D0407 | Sent: 4/24/2025 \| 03:23 PM<br>Viewed: 4/25/2025 \| 02:51 PM<br>Signed: 4/25/2025 \| 02:54 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 73.158.61.181 | |

Electronic Record and Signature Disclosure:
    Accepted: 4/25/2025 | 02:51 PM
    ID: 8a2a1f2d-b7dd-469c-a675-45d3873c761d

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/24/2025 \| 03:23 PM |
| Certified Delivered | Security Checked | 4/25/2025 \| 02:51 PM |
| Signing Complete | Security Checked | 4/25/2025 \| 02:54 PM |
| Completed | Security Checked | 4/25/2025 \| 02:54 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Miller Nash LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Miller Nash LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: hsigler@millernash.com

**To advise Miller Nash LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at hsigler@millernash.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Miller Nash LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to hsigler@millernash.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Miller Nash LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to hsigler@millernash.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Miller Nash LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Miller Nash LLP during the course of your relationship with Miller Nash LLP.